**UNITED STATES DISTRICT COURT**

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEFFREY LYNN STONECIPHER, | Case No. 1:13-cv-01673-SKO |
| Plaintiff, | **ORDER ON PLAINTIFF'S COMPLAINT** |
| | (Doc. No. 15) |
| v. | |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | |
| Defendant. | |

**INTRODUCTION**

Plaintiff, Jeffrey Lynn Stonecipher ("Plaintiff"), seeks judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") benefits pursuant to Titles II and XVI of the Social Security Act. 42 U.S.C. § 405(g). The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[1]

---

[1] The parties consented to the jurisdiction of a U.S. Magistrate Judge. (Docs. 8, 9.)

**FACTUAL BACKGROUND**

Plaintiff was born on July 28, 1964, and alleges disability beginning on June 1, 2010. Plaintiff claims he is disabled due to hypertension, congestive heart failure, atrial fibrillation, and valley fever. (AR 217.)

**A.     Relevant Medical Evidence**

On May 28, 2010, Plaintiff was hospitalized at Kern Medical Center reporting symptoms of chest pain and shortness of breath for three days. (AR 289-95.) A test measuring heart failure indicated left ventricular hypertrophy, global hypokinesis of the left ventricle and "elevated [right ventricular systolic pressure]." (AR 381.) A chest x-ray revealed congestive heart failure with cardiomegaly, pulmonary vascular congestion, and interstitial edema. (AR 382.) The attending physician diagnosed Plaintiff with atrial fibrillation – rate controlled, congestive heart failure, hypertension, and a history of drug abuse was noted. (AR 381.)

On December 15, 2010, State Agency medical consultant Kenneth Glass, M.D., reviewed Plaintiff's medical records and completed a residual functional capacity assessment form. Dr. Glass opined Plaintiff could lift and carry 10 pounds occasionally and less than 10 pounds frequently. (AR 578-82.) Dr. Glass further opined that Plaintiff could stand and walk at least 2 hours in an 8-hour day and sit about 6 hours in an 8-hour workday with occasional climbing of ramps/stairs, kneeling, crouching, and crawling, but precluding from climbing ladders, ropes and/ or scaffolds. (AR 578-82.)

In March 2011, C. De La Rosa, a state agency physician, reviewed Plaintiff's medical records and opined that Plaintiff was limited to lifting 20 pounds and standing and walking 2 hours out of an 8 hour work day. (AR 651-56.)

In August 2011, Rushabh Shah, M.D., Plaintiff's treating physician, reported Plaintiff was diagnosed in August 2010 with atrial fibrillation and congestive heart failure, and Plaintiff had been hospitalized multiple times for heart problems. (AR 769.) Dr. Shah opined that prior to his illness Plaintiff could work and participate in activities of daily living, but since his illness, Plaintiff's prognosis was poor and he was unable to work or hold gainful employment. (AR 769.)

2

On September 29, 2011, Plaintiff was admitted to the cardiology clinic at Kern Medical Center with complaints of nausea and diarrhea that had been bothering him for about two months. (AR 772). Plaintiff complained of dizziness and palpitations (AR 772), and he was transferred to the emergency room for further evaluation (AR 775). Plaintiff underwent further evaluation, and was considered "improved" upon re-check. (AR 779.) He was given medication and his "A-fib" was resolved. (AR 779.) A clinical impression of medication noncompliance and polysubstance abuse was noted, but his condition was considered stable. (AR 779.)

**B.    Plaintiff's Testimony**

Plaintiff is currently homeless, but stays at a "Christian home" occasionally to shower and clean up. (AR 51.) Plaintiff admitted to previous periods of noncompliance with prescribed medication because he "misplaces the medication" due to a lack of a "proper place to keep it." (AR 51.) Plaintiff also claims there have been times he "completely ran out of medication" and "did not have any way to get to . . . the pharmacy to pay for or to pick up any medication." (AR 60.) Plaintiff testified that prior to his last visit to the emergency room he had been fully compliant with medication. (AR 61.)

Plaintiff experiences side effects from his medication which include everything becoming "fuzzy" and as a result of this fuzziness he has fallen and hit his head. (AR 52.) He has to lie down two to three times during the day due to nausea; on a bad day, he will lie down for most of the day. (AR 53-54.)

Two weeks prior to the hearing, Plaintiff saw a cardiologist for a routine visit; an electrocardiogram was administered and he was sent to the emergency room because his blood pressure was extremely elevated and his heart rate was 140 and very erratic. (AR 51.)

Plaintiff testified that he experiences shortness of breath, mostly at night, and "sweat jags." (AR 52.) Plaintiff explains "sweat jags" are episodes consisting of nausea and profuse sweating, which occur two to three times a day. (AR 50.) Plaintiff testified that "sweat jags" require him to lie down on average three times a day, and occasionally all day long. (AR 53.) Plaintiff states he has "good days and . . . bad days." (AR 53.) He becomes nauseated four days of the week, mostly

during the morning, but it occurs whenever he physically exerts himself or he is in a stressful situation. (AR 55.)

Plaintiff testified that the nausea and sweating he experiences are a result of congestive heart failure and occur at least four days a week for part of the day. (AR 55.) Plaintiff states these symptoms can occur "if [he] ha[s] to climb a flight of stairs twice." (AR 56.)

Plaintiff last worked as a "steeplejack" which included working on chimneys at power plants. (AR 54.) He can no longer perform that work because climbing ladders and stairs, which was included in his past work, now makes him "sweat." (AR 55.)

**C.    Administrative Proceedings**

On January 27, 2012, the ALJ issued a decision and determined Plaintiff was not disabled. (AR 20-30.) The ALJ found that Plaintiff had severe impairments including atrial fibrillation, congestive heart failure, hypertension, and valley fever. (AR 25.) The ALJ determined that these impairments did not meet or equal a listed impairment. (AR 26.) The ALJ found Plaintiff retained the residual functional capacity ("RFC") to perform a reduced range of sedentary work, but was limited to occasional postural changes such as bending, stooping and kneeling; no climbing ladders, ropes, scaffolds or work in unprotected heights. (AR 26.) Given this RFC, the ALJ found that other jobs existed that Plaintiff could perform. (AR 29-30.) The ALJ concluded that Plaintiff was not under disability, as defined in the Social Security Act, from June 1, 2010, through January 27, 2012. (AR 30.)

**D.    Plaintiff's Arguments on Appeal**

On October 16, 2013, Plaintiff filed a complaint before this Court seeking review of the ALJ's decision. Plaintiff argues the ALJ failed to provide legally sufficient reasons for rejecting Plaintiff's testimony about the extent of his limitations.

**SCOPE OF REVIEW**

The ALJ's decision denying benefits "will be disturbed only if that decision is not supported by substantial evidence or it is based upon legal error." *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999). In reviewing the Commissioner's decision, the Court may not substitute its judgment for that of the Commissioner. *Macri v. Chater*, 93 F.3d 540, 543 (9th Cir. 1996).

4

Instead, the Court must determine whether the Commissioner applied the proper legal standards and whether substantial evidence exists in the record to support the Commissioner's findings. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). "Substantial evidence is more than a mere scintilla but less than a preponderance." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)). The Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citation and internal quotation marks omitted).

## APPLICABLE LAW

An individual is considered disabled for purposes of disability benefits if he or she is unable to engage in any substantial, gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted, or can be expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see also Barnhart v. Thomas*, 540 U.S. 20, 23 (2003). The impairment or impairments must result from anatomical, physiological, or psychological abnormalities that are demonstrable by medically accepted clinical and laboratory diagnostic techniques and must be of such severity that the claimant is not only unable to do her previous work, but cannot, considering her age, education, and work experience, engage in any other kind of substantial, gainful work that exists in the national economy. 42 U.S.C. §§ 423(d)(2)-(3), 1382c(a)(3)(B), (D).

The regulations provide that the ALJ must undertake a specific five-step sequential analysis in the process of evaluating a disability. In the First Step, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). If not, in the Second Step, the ALJ must determine whether the claimant has a severe impairment or a combination of impairments significantly limiting her from

performing basic work activities. *Id*. §§ 404.1520(c), 416.920(c). If so, in the Third Step, the ALJ must determine whether the claimant has a severe impairment or combination of impairments that meets or equals the requirements of the Listing of Impairments ("Listing"), 20 C.F.R. 404, Subpart P, App. 1. *Id*. §§ 404.1520(d), 416.920(d). If not, in the Fourth Step, the ALJ must determine whether the claimant has sufficient residual functional capacity despite the impairment or various limitations to perform her past work. *Id*. §§ 404.1520(f), 416.920(f). If not, in Step Five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in significant numbers in the national economy. *Id*. §§ 404.1520(g), 416.920(g). If a claimant is found to be disabled or not disabled at any step in the sequence, there is no need to consider subsequent steps. *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. §§ 404.1520, 416.920.

**DISCUSSION**

**A.     The ALJ Erred In Assessing Plaintiff's Credibility**

In evaluating the credibility of a claimant's testimony regarding subjective pain, an ALJ must engage in a two-step analysis. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment that could reasonably be expected to produce the pain or other symptoms alleged. *Id*. The claimant is not required to show that her impairment "could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Id.* (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir.2007)). If the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if she gives "specific, clear and convincing reasons" for the rejection. *Id*. As the Ninth Circuit has explained:

> The ALJ may consider many factors in weighing a claimant's credibility, including (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. If the ALJ's finding is supported by substantial evidence, the court may not engage in second-guessing.

6

*Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir.2008) (citations and internal quotation marks omitted); *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226–27 (9th Cir.2009); 20 C.F.R. §§ 404.1529, 416.929. Other factors the ALJ may consider include a claimant's work record and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains. *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir.1997). The ALJ is required to state clear and convincing reasons to support discounting Plaintiff's subjective complaints and credibility.

### 1. The ALJ's Erred in Considering Plaintiff's Daily Activities

Plaintiff argues it was error for the ALJ to discredit his symptom testimony based on his daily activities.  Plaintiff claims the mere fact he carries on normal daily activities does not detract from his credibility as to his overall disability, and nothing in his testimony or reported daily activities belies his assertion he experiences both "good and bad days."  Plaintiff maintains the ALJ erred because he failed to demonstrate how the capability to perform the cited activities translated into the ability to work on a full-time basis.

Defendant contends Plaintiff's statements in his function report contradict the argument that he had a few good and mostly bad days.  Defendant argues Plaintiff's ability to perform the daily activities discussed by the ALJ show he is not as limited as Plaintiff claims.

The Ninth Circuit has held that the "mere fact that a Plaintiff has carried on certain daily activities, such as grocery shopping, driving a car or limited walking for exercise, does not in any way detract from her credibility as to her overall disability." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001).  It is only where the level of activity is inconsistent with a claimed limitation that the activity has any bearing on credibility." *Reddick v. Chater,* 157 F.3d 715, 722 (9th Cir. 1998).  Further the ALJ must make "specific findings relating to daily activities and their transferability to conclude that a claimant's daily activities warrant an adverse credibility determination." *Orn*, 495 F.3d at 639.

In assessing Plaintiff's credibility, the ALJ noted that "[a]fter careful consideration" Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity

<pre>
</pre>

assessment." (AR 29.)  The ALJ stated Plaintiff failed to present "objective medical evidence to support his claims," and Plaintiff's "reported activities of daily living [were] inconsistent with his alleged inability to do all work." (AR 29.)  Plaintiff's daily activities included "doing laundry, ironing, sweeping and dishes, cooking, shopping, watching TV, and yard sales." (AR 29.)

Plaintiff's ability to engage in some activities of daily living does not necessarily reflect on Plaintiff's credibility. *Vertigan*, 260 F.3d at 1049-50.  Plaintiff testified that he experiences nausea and sweating at least four days per week, but these symptoms occur more frequently when he exerts himself or when he encounters a stressful situation. (AR 9.)  At times, nausea requires Plaintiff to lie down all day. (AR 53.)  Plaintiff also testified he experiences light-headedness and has fallen down, losing consciousness as a result. (AR 52-53.)  It is not clear how the ALJ's discussion of Plaintiff's daily activities is relevant to these particular symptoms and limitations. Plaintiff's ability to iron clothing or watch television for a certain amount of time does not necessarily bear on whether he experiences frequent nausea, sweating episodes, or dizziness.  The ALJ did not discuss how the frequency and nature of Plaintiff's daily activities detract from his symptom testimony.  Plaintiff's function report indicates he is able to do laundry and iron two times per week, and he would perform sweeping activities up to four times per week, if the shelter had openings. (AR 235.)[2]  If so, he would help with daily chores. (AR 233.)   Thus, may of the activities the ALJ referred to as "daily" were not necessarily activities that Plaintiff undertook every day for an entire 8-hour period.

Moreover, the daily activities noted by the ALJ are not so incongruent with Plaintiff's alleged symptoms that the credibility implication is obvious, requiring no particular discussion – such as if a claimant alleged disabling and immobilizing back pain yet reported playing golf three times per week.  Plaintiff's described activities were not clear and convincing evidence to reject Plaintiff's subjective symptom testimony related to his nausea, sweating episodes, and dizziness.

---

[2] As Plaintiff explained, he would have to inquire daily at the shelter about whether there was bed or meal availability on any particular day. (AR 233.)

8

### 2. The ALJ's Additional Bases for Rejecting Plaintiff's Credibility Were Not Clear and Convincing

The ALJ also found that Plaintiff's symptom testimony was not supported by objective medical evidence. (AR 29.) Plaintiff maintains, however, that a lack of objective medical evidence is not a sufficient basis, standing alone, to reject his symptom testimony. Therefore, Plaintiff contends the ALJ erred in discrediting Plaintiff's symptom testimony on these grounds.

The ALJ specifically and expressly, in the credibility portion of the decision, stated that Plaintiff "alleged disabling conditions yet does not have the objective medical evidence to support his claims." (AR 29.) In another portion of the decision, the ALJ noted that "objective findings fail to provide strong support for Plaintiff's allegations of disabling symptoms and limitations." (AR 27.) The ALJ then listed some of the objective medical findings. An ALJ does not err in considering a lack of objective medical evidence to support lay testimony as to the degree of a claimant's pain, so long as this is not the sole basis for an adverse credibility finding. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *see also Burch v. Barnhart*, 400 F.3d 676, 681 ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis."). As set forth in 20 C.F.R. § 404.1529(c)(2), objective medical evidence "is a useful indicator to assist" the agency in making "reasonable conclusions about the intensity and persistence of [a claimant's] symptoms and the effect those symptoms, such as pain may have on [a claimant's] ability to work." However, Section 404.1529(c)(2) also provides that the agency will not reject a claimant's statements regarding the intensity and persistence of pain symptoms or whether those symptoms affect a claimant's ability to work "solely because the available objective medical evidence does not substantiate [the claimant's] statements."

Defendant argues there were two other legally sufficient bases the ALJ discussed in rejecting Plaintiff's symptom testimony: Plaintiff's lack of medication compliance and that no reliable medical source "endorsed" Plaintiff's subjective limitations. Therefore, the ALJ's consideration of the lack of objective medical evidence was not the *sole* basis for rejecting Plaintiff's subjective lay testimony.

While Defendant articulates the lack of a physician "endorsement" as a separate basis for discrediting Plaintiff's symptom testimony, the ALJ's credibility analysis did not articulate such a basis. It is also unclear that a distinction can be drawn between a finding that lay testimony is not supported by objective medical evidence and a finding that lay testimony is not "endorsed" by a physician. Additionally, it is not clear how a treating source would "endorse" subjective limitations in any event. Plaintiff reported his symptoms to his treating physicians, which were noted in his medical records. (AR 772 (Plaintiff reported nausea, diarrhea, dizziness, and palpitations).) Plaintiff was prescribed multiple medications including Diltiazem, Lisinopril, Simvastatin, "Coreg," Digitalis, Aldactone, and Lasix (*e.g.,* AR 772), and there is no indication his alleged symptoms were not considered part of his diagnosed and treated conditions. Even to the extent the lack of a treating doctor's "endorsement" of Plaintiff's symptoms was discussed by the ALJ, it is not a clear and convincing basis to reject Plaintiff's testimony.

Defendant argues the ALJ also relied on Plaintiff's lack of medication compliance as a basis to reject his symptom testimony. While not discussed in the credibility section of the decision, the ALJ did note Plaintiff's lack of medication compliance. (AR 28.) Specifically, the ALJ found that Plaintiff "has a history of noncompliance but states he takes his medications most of the time." (AR 28.)

Substantial evidence does not support this finding, and it is not a clear and convincing basis to discredit Plaintiff's symptom testimony. The ALJ's statement was not an accurate characterization of Plaintiff's testimony about his medication compliance. Plaintiff indicated at the hearing that he is *not* good at taking his prescribed medication because there are occasions when he does not "have a proper place to keep it," and he has been unable to reach a pharmacy or pay for the medications on other occasions. (AR 60.) Plaintiff did not state he takes his medication most of the time; rather, he acknowledged his non-compliance and explained why he failed to take his medication as prescribed. Not only did the ALJ fail to accurately characterize Plaintiff's testimony about his medication compliance, but Plaintiff offered good reasons for not taking the medication as prescribed – i.e., lack of funds and, because he is essentially homeless, he often lacks a good place to keep the medication. If a claimant offers a good reason for medication non-

compliance, such as not being able to afford the treatment, then the fact that a claimant is not taking medication is not a clear and convincing basis for discrediting symptom testimony. *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996). Even if the ALJ relied on Plaintiff's lack of medication compliance as a basis to reject Plaintiff's credibility, under these facts it does not constitute a clear and convincing reason and it is not supported by substantial evidence.

In sum, none of the ALJ's bases for discrediting Plaintiff's symptom testimony are clear and convincing or supported by substantial evidence.

**B.     Remand is Required**

"The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a hearing." 42 U.S.C. § 405(g). In Social Security cases, the decision to remand to the Commissioner for further proceedings or simply to award benefits is within the discretion of the court. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). "If additional proceedings can remedy defects in the original administrative proceedings, a social security case should be remanded. Where, however, a rehearing could simply delay receipt of benefits, reversal [and an award of benefits] is appropriate." *Id.* (alteration in original) (internal quotation marks omitted); *see also Varney v. Sec'y of Health & Human Servs.*, 859 F.2d 1396, 1399 (9th Cir. 1988) ("Generally, we direct the award of benefits in cases where no useful purpose would be served by further administrative proceedings, or where the record has been thoroughly developed." (citation omitted)). Here, the ALJ erred in assessing Plaintiff's credibility, which can be given renewed consideration by the ALJ on remand. Because additional proceedings can remedy the defect in the original proceedings, remand rather than reversal and an award of benefits is appropriate.

## CONCLUSION

Based on the foregoing, the Court finds that the ALJ's decision is not supported by substantial evidence and is, therefore, REVERSED and the case REMANDED to the ALJ for further proceedings consistent with this order. The Clerk of this Court is DIRECTED to enter

judgment in favor of Plaintiff Jeffrey Lynn Stonecipher and against Defendant Carolyn W. Colvin, Commissioner of Social Security.

IT IS SO ORDERED.

Dated:   **December 8, 2014**                         **/s/ Sheila K. Oberto**
                                                                        UNITED STATES MAGISTRATE JUDGE